IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FORT HALL LANDOWNERS ALLIANCE, INC., ELI MOSHO, FRANK PAPSE, SR., ERNESTINE WERELUS, ALENE AUCK MENTA, WILVERNA COVINGTON, ALETHEA WETCHIE, LEE STONE, TWILA PAHVITSE BEAR, LEE BEAR, NINO BEAR, and INEZ PREACHER, on Behalf of Themselves and all others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF INDIAN AFFAIRS, UNITED STATES DEPARTMENT OF THE INTERIOR, and GALE NORTON, Secretary, U.S. Department of the Interior, <br><br> Defendants. | Case No. CV-99-52-E-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it numerous pre-trial motions, along with issues raised in trial briefs and at a pre-trial conference. The Court will address each below. The Court will refer to the various plaintiffs collectively as the Tribes.

1.   **Rule 406**

The Tribes seek a ruling under Rule of Evidence 406, based on defendants'
routine business practice, that defendants disclosed personal information of Tribal
members to every prospective lessee seeking to negotiate a lease of individually
allotted agricultural land on Fort Hall from "early 1997 through February, 1999."
As the Tribes recognize, the Court rejected their earlier attempt to establish this
routine practice from 1993 to 1999.  The Court held that more than two-thirds of
the lease files contained no evidence of a release of personal information, and
hence the Tribes could not establish a routine practice for those years.

The Tribes have responded by shortening the period to which they seek to
apply Rule 406.  They point out, accurately, that Liz Siow (the person in charge of
leasing), testified that the official policy embodied in the policy letter – clearly
implying that Fort Hall will release information to all lessees – was in effect from
about 1997 to the time she left the office in 1999.  However, she also testified that
she was not sure whether that policy was followed in every file.  The Tribes shore
up Siow's uncertainty with a statement of their counsel that their search through
the lease files revealed that for 1998 and 1999, about 60% of the files contain
direct evidence of a release of personal information.  *See Affidavit of Locke.*  The
Tribes contend that this statistical evidence, in combination with an official policy

**Memorandum Decision and Order – Page 2**

of release during those same years, is enough to trigger Rule 406.

If the 60% figure is accurate, the Tribes present a compelling argument. However, there are questions regarding the 60% figure. For example, the Fort Hall office opened 259 lease files for 1998. Assuming the Tribes are correct that there is direct evidence in 64 of these files that a release was made, that means that a release was made in only 24.7% of the lease files opened, a figure not at all consistent with a "routine practice" under Rule 406.

The Tribes do not use this total figure of 259 total leases, however. Instead, they count only 114 leases for 1998, although they do not explain how they got that figure. The record is clear that 259 lease files were opened for 1998, although not all were agricultural leases. Some are labeled "homesite" or "business." About 71 leases were so labeled, leaving 188 leases that appear to be agricultural leases, a figure far above the 114 counted by the Tribes.

This figures make a big difference. Obviously, the lower the total, the higher the percentage. Without knowing how the Tribes arrived at the total lease figures,[1] the Court cannot find that Rule 406 applies.

The Court has an even more basic concern with the Tribe's motion: It is essentially a motion for summary judgment, not a motion in limine. Rule 406

---

[1] For 1999, the record shows that 179 lease files were opened, yet the Tribes only count 105.

**Memorandum Decision and Order – Page 3**

simply governs whether evidence of habit or routine practice is relevant.  A true

motion in limine would seek a ruling in advance of trial on whether certain

evidence fell within Rule 406 and was hence relevant. However, the Tribes ask for

much more.  They seek a ruling *as a matter of law* that all leases from early 1997

to 1999 had improper releases of information.

That is a motion for summary judgment.  The deadline for dispositive

motions has passed.  For this reason, in addition to the substantive analysis set

forth above, the Court will deny this part of the Tribes' motion.[2]

## 2.    Defendants' Admissions to Disclosures in 118 Leases

The Tribes filed a motion in limine seeking a ruling that the defendants have

admitted releasing personal information as to 118 leases.  The Tribes claim that

these admissions occurred in various discovery documents.

They claim first that admissions are contained in the defendants' answers to

interrogatories.  It appears, however, that such answers are not binding as

admissions in this Circuit.  *See Victory Carriers Inc. v. Stockton Stevedoring Co.,*

388 F.2d 955, 959 (9th Cir. 1968) (holding that answers to interrogatories not given

---

[2]  This analysis applies equally to the Tribes' second argument under Rule 406.  In that argument, the Tribes contend that they are entitled "to an inference under Rule 406" that if information was released to one owner of an allotment, it was released to all owners of that allotment.  Once again, the Tribes are essentially seeking a summary judgment rather than a ruling on relevancy.

**Memorandum Decision and Order – Page 4**

the same binding effect conferred on responses to requests for admission);

*Donovan v. Crisotomo*, 689 F.2d 869, 875 (9th Cir. 1982) (stating that

"[i]nterrogatories do not supersede or supplement pleadings, nor do they bind

parties as an allegation or admission in a pleading or pre-trial order").  Thus, the

defendants' answers to interrogatories cannot bind them as admissions (although

inconsistencies can certainly be highlighted at trial to impeach or for other

purposes).

The Tribes also label as admissions statements, and attachments, in the

Declaration of Stephanie Lynch.  However, Lynch qualified her report by saying

that her "threshold for finding that a potential disclosure had occurred was

extremely liberal."  She goes on to explain that she assumed potential disclosures

even in the absence of evidence that a disclosure was actually made.  Given all this,

Lynch's report cannot be deemed an admission that disclosures actually took place

in the instances she cites.  For the same reason, the report of expert John Frome

cannot be an admission – he merely assumed, rather than admitted, that disclosures

had taken place.

Finally, the Tribes point to the defendants' "Supplemental Response," which

includes a response to a request that defendants admit a custom or practice of

revealing personal information.  In response, defendants denied that a custom or

**Memorandum Decision and Order – Page 5**

practice existed but did attach documents "which indicate that a disclosure may have been made."

The Tribes have not provided the Court with the text of the request for admission.  From the briefing, it appears that the Tribes merely asked the defendants to admit a custom or practice of disclosing personal information of Tribal members to third parties.  The defendants provided a full answer by denying that.  While the defendants went on to provide documents, they qualified their production by saying only that the documents indicated a disclosure "may have been made."  The Court cannot find an admission here that disclosures were actually made.  Certainly, the defendants' response is relevant on that point, but not necessarily determinative as an admission.

Accordingly, the Court will deny the Tribes' motion on this issue.

**3.**    **Class Definition**

The parties argue over the scope of the class.  The Tribes contend the class should include  persons who held an undivided interest in an allotment in 1993, regardless of when the disclosure of their information occurred.  This argument essentially seeks a ruling that the date of disclosure is not relevant in determining the scope of the class.  In response, the defendants have filed their own motion seeking to exclude any evidence of damages for leases approved before 1993 and

after 1999.

In an earlier decision, the Court defined the class as "all owners of trust land on the Reservation who had their names, addresses, and ownership information disclosed by the defendants in violation of federal regulations and the Privacy Act." *See Memorandum Decision* (docket no. 204).  While this definition does not specify the dates the disclosures took place, the Tribes later described the class as including landowners "whose personal information has been disclosed by defendants without the landowner's consent from February 5, 1993 to present." *See Tribes' Brief* at p. 1 (docket no. 308).  This description by the Tribes ties the disclosure date to the class definition.  Later, the Court noted that the Tribes had narrowed their claims further: "[T]he plaintiffs have since narrowed their claims to the period from 1993 through 1999".  *See Memorandum Decision* (docket no. 341) at p. 4.[3]

The Tribes' Privacy Act claims allege that improper disclosures took place. By confining  their Privacy Act claims to the period 1993 to 1999, the Tribes are alleging that improper disclosures took place in that period.  The Tribes cannot now, on the eve of trial, seek to broaden the scope of this lawsuit by seeking

---

[3] On a related note, the Tribes' counsel also represented at an oral argument that the Tribes were seeking recovery only for lease renewals resulting from negotiation and not from the bidding process.

**Memorandum Decision and Order – Page 7**

recovery for disclosures that occurred outside that period.

To the extent the Tribe is seeking in its motion to admit evidence of disclosures outside of the period 1993 to 1999, for the purpose of damages, the motion will be denied.  To the extent the defendants are seeking to exclude evidence of disclosures outside of the period 1993 to 1999, for the purpose of damages, the motion will be granted.

These rulings are expressly premised on the fact that the evidence is being introduced to prove damages.  Still unresolved is whether evidence of disclosures outside of 1993 to 1999 may be offered for other purposes.  That issue must await trial.

**4.   <u>Defendants' Request to Reconsider Statute of Limitations Issue</u>**

The defendants ask this Court to reconsider its statute of limitations decision.  The Court adheres to its prior decision and so will deny this motion.

**5.   <u>Defendants' Motion to Exclude Dr. McIntosh</u>**

The defendants seek to exclude the Tribes' expert Dr. McIntosh.  He will testify about the market rates for various types of leases in the Fort Hall area.  The defendants argue that his testimony is based on the rental rate for crop-share leases, even though it is well-established that almost all of the Tribal leases are cash leases.

The Tribes respond that they will use Dr. McInstosh's crop-share analysis not to establish damages, but to verify the accuracy of their other expert, Ed Morse. Morse will testify regarding cash lease valuation, and Dr. McIntosh will verify that analysis.

The Court does not know enough at this point about their testimony to grant this motion. Accordingly, the Court will deny the motion at this point, without prejudice to the defendants' right to raise it again at trial.

**6.      Defendants' Motion to Exclude Evidence of Competitively Bid Leases**

The Court reaffirms its prior decision that the Tribes are precluded from seeking damages for competitively bid leases.  Evidence of such leases may, however, be offered for other purposes.  While the Court expresses no opinion on the admissibility of such evidence for other purposes, the potential for its admission precludes this Court from granting this motion outright.  Accordingly, the Court will grant it with the qualification that the evidence could be offered for purposes other than damages.

**7.      Deceased Landowners**

The Tribes agree that they will not be seeking recovery for deceased landowners and the defendants' motion to exclude on that issue will be granted.

**8.      Adverse Effect**

**Memorandum Decision and Order – Page 9**

The Tribes allege that the Court issued a summary judgment in their favor on the adverse effect element of their Privacy Act claim.  The Court did find that the Tribes had made sufficient allegations that they suffered the "trifle" necessary to satisfy the standing requirement, and that those allegations also satisfied the causation requirement.  That simply meant, as the Court related, that the Tribes had "opened the door" to the courthouse (that is, made a threshold standing showing), not that they had proven that disclosures were made or that those disclosures had caused actual damages.

Indeed, the Court clearly held that the Tribes (1) "need to prove each disclosure separately," and (2) show actual damages.  If the Tribes show that personal information was sent to a potential lessee, the defendants remain free to rebut that evidence by showing that it never reached the lessee.  Moreover, it is not enough for the Tribes to show a disclosure – they must also show actual damages caused by that disclosure.  These issues remain for trial.

## 9.   **Bifurcation of Trial**

The Court has determined that bifurcation would not be beneficial and so will deny this request by defendants.

## 10.   **Rule 1006 Summary**

The Court reserves ruling on this until trial.  Given that this is a bench trial,

**Memorandum Decision and Order – Page 10**

the inclusion of material in the summary that should be excluded is not necessarily fatal to its admission.

**11.     Undisclosed & Unavailable Witnesses**

The Court will reserve for trial any argument over undisclosed or unavailable witnesses.  With regard to undisclosed witnesses, counsel know that the Court requires strict adherence to all the rules governing pre-trial disclosure.

**12.     BIA Approval Process**

The Tribes agree, and the Court reaffirms, that the BIA approval process is not at issue in this case.

**13.     Contacting Class Members**

The defendants seek to contact two members of the class whose depositions have already been taken.  The defendants have not justified the additional time and effort this would entail so close to trial.  This request will therefore be denied.

**14.     Trial Time Allocation**

Under the fifty-fifty split of trial time, each side has 67.5 hours of trial time to present their case.  The Tribes request a sixty-forty split on the ground that they have more evidence to present than the defendants.  The Court will address this matter with counsel at trial.  Counsel may be able to reach some agreement on this issue.

**Memorandum Decision and Order – Page 11**

# ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the following

motions are DENIED: (1) motion in limine to exclude evidence concerning time-

barred leases (Docket No. 394); (2) motion in limine to exclude the expert report

and testimony of Dr. McIntosh (Docket No. 395), without prejudice to the right of

defendants to raise the motion again at trial; (3) the Tribe's joint motion in limine

(Docket No. 402), although whether disclosures outside the period 1993 to 1999,

introduced for purposes other than damages, are admissible must await trial for

resolution.

IT IS FURTHER ORDERED, that the following motions are GRANTED:

(1) motion in limine to exclude evidence seeking damages concerning leases that

were approved prior to February 5 1993,  (Docket No. 391), to the extent that

evidence of disclosures occurring outside the period of 1993 to 1999, for the

purpose of damages, will be excluded; (2) motion in limine to exclude evidence

concerning deceased landowners (Docket No. 392); (3) motion in limine to exclude

evidence concerning competitively bid leases (Docket No. 393) although such

leases may be proffered for purposes other than damages; (4)  IT IS FURTHER

ORDERED, that the motion to strike (Docket No. 415); motion to set briefing

schedule (Docket No. 375) is DEEMED MOOT.



DATED:  **July 16, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 13**